UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BIMBER'S DELWOOD, INC.,

BISON BILLIARDS INC.,

FIVE STAR LANES, INC.,

FOUR ACES BAR & GRILL,

KARATE KEN'S, LTD.,

PHARAOHS GC, INC.,

SOONERTUNES PRODUCTIONS,

THE BODY SHOP GENTLEMEN'S CLUB, INC., and

THE COWBOY OF CHIPPEWA, INC.,

                              *Plaintiffs,*

v.

Attorney General LETITIA A. JAMES, in her official capacity as the
Attorney General for the State of New York,

Governor ANDREW M. CUOMO, in his official capacity as
the Governor of the State of New York,

NEW YORK STATE ASSEMBLY, and

NEW YORK STATE SENATE,

                              *Defendants.*

_____

**COMPLAINT**

Civil Case No. 20-cv-1043_____

Plaintiffs BIMBER'S DELWOOD, INC., BISON BILLIARDS INC., FIVE STAR

LANES, INC., FOUR ACES BAR & GRILL, KARATE KEN'S, LTD., PHARAOHS GC, INC.,

SOONERTUNES PRODUCTIONS, THE BODY SHOP GENTLEMEN'S CLUB, INC., and

THE COWBOY OF CHIPPEWA, INC., as for their Complaint against Defendants LETITIA A.

{H2678777.4}

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

1

JAMES, in her official capacity as the Attorney General for the State of New York, ANDREW M. CUOMO, in his official capacity as the Governor of the State of New York, the NEW YORK STATE SENATE, and the NEW YORK STATE ASSEMBLY (collectively, "Defendants"), by and through their attorneys, HoganWillig, PLLC, hereby collectively allege as follows:

## NATURE OF ACTION

1. This action seeks a declaratory judgment, injunctive relief, and attorneys' fees and costs for the deprivation of Plaintiffs' constitutional rights to which they are entitled under both the United States Constitution, and the New York State Constitution.

2. This action further seeks recovery for deprivations sustained by Plaintiffs, and damages for violations committed by Defendants while acting under color of State law, against Plaintiffs' rights and privileges guaranteed by the First, Fifth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution, as applicable; Article IV, § 3, Clause 7 of the New York State Constitution; and for violations of New York State Executive Law § 29-a.

3. Defendants, in a disturbing and gross abuse of their power, have, in the name of the COVID-19 pandemic, attempted to expand their authority by unprecedented lengths, without any proper constitutional, statutory, or common law basis therefor.

4. Inherent within the actions of all Defendants is the flawed yet asserted justification that a national emergency suspends the Constitutions of the United States and the State of New York.

## THE PARTIES

5. At all times relevant hereto, Plaintiff BIMBER'S DELWOOD, INC. ("Plaintiff Delwood") was and is a New York corporation with its principal place of business located at 3115 Delaware Avenue, Buffalo, New York 14217, wherein Plaintiff Delwood operates a

licensed bar and/or restaurant, and which has been unduly, profoundly and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

6.      At all times relevant hereto, Plaintiff BISON BILLIARDS INC. ("Plaintiff Bison") was and is a New York corporation with its principal place of business located at 4545 Transit Road, Williamsville, New York 14221, wherein Plaintiff Bison operates a billiards hall which is licensed to serve its patrons alcoholic beverages, and which has been unduly, profoundly, and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

7.      At all times relevant hereto, Plaintiff FIVE STAR LANES, INC. ("Plaintiff Five Star") was and is a New York corporation with its principal place of business located at 2426 South Park Avenue, Buffalo, New York 14220, wherein Plaintiff Five Star operates a bowling alley which is licensed to serve its patrons alcoholic beverages, and which has been unduly, profoundly, and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

8.      At all times relevant hereto, Plaintiff FOUR ACES BAR & GRILL ("Plaintiff Four Aces") was and is a licensed bar and/or restaurant with its principal place of business located at 3314 Lake Shore Road, Blasdell, New York 14219 and which has been unduly, profoundly, and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

9.      At all times relevant hereto, Plaintiff KARATE KEN'S, LTD. ("Plaintiff Karate Ken's") was and is a New York corporation with its principal place of business located at 5901 South Transit Road, Lockport, New York 14094, wherein Plaintiff Karate Ken's operates a

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

Martial Arts School, and which has been unduly, profoundly, and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

10.     At all times relevant hereto, Plaintiff PHARAOHS GC, INC. ("Plaintiff Pharaohs") was and is a New York corporation with its principal place of business located at 999 Aero Drive, Cheektowaga, New York 14225, wherein Plaintiff Pharaohs operates a licensed bar and/or restaurant and gentlemen's club, and which has been unduly, profoundly and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

11.     At all times relevant hereto, Plaintiff SOONERTUNES PRODUCTIONS ("Plaintiff SoonerTunes") was and is an entertainment service with its principal place of business located at P.O. Box 203, Amherst, New York 14228, through which Plaintiff SoonerTunes operates its traveling DJ and karaoke services, and which has been unduly, profoundly and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

12.     At all times relevant hereto, Plaintiff THE BODY SHOP GENTLEMEN'S CLUB, INC. ("Plaintiff Body Shop") was and is a New York corporation with its principal place of business located at 1285 William Street, Buffalo, New York 14206, wherein Plaintiff Body Shop operates a licensed bar and/or restaurant and gentlemen's club, and which has been unduly, profoundly and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

13.     At all times relevant hereto, Plaintiff THE COWBOY OF CHIPPEWA, INC. ("Plaintiff Cowboy") was and is a New York corporation with its principal place of business located at 45 West Chippewa Street, Buffalo, New York 14202, wherein Plaintiff Cowboy operates a licensed bar and/or restaurant, and which has been unduly, profoundly and negatively impacted by the actions of Defendants, as set forth in further detail hereinbelow.

{H2678777.4}

4

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

14.     At all times relevant hereto, Defendant LETITIA A. JAMES ("Defendant James") was and is the Attorney General for the State of New York, and was and is acting under color of State law and in her official capacity. Defendant James' principal place of business is located at the State Capitol Building, Albany, New York 12224, with a regional office located at Main Place Tower, Suite 300A, 350 Main Street, Buffalo, New York 14202.

15.     At all times relevant hereto, Defendant ANDREW M. CUOMO ("Defendant Cuomo") was and is the Governor of the State of New York, and was and is acting under color of State law and in his official capacity. Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York 12224.

16.     At all times relevant hereto, Defendant NEW YORK STATE SENATE ("Defendant Senate") is the body that is subject to a proceeding for federal constitutional violations pursuant to *Ex parte Young*, 209 U.S. 123, 160-61 (1908).

17.     At all times relevant hereto, Defendant NEW YORK STATE ASSEMBLY ("Defendant Assembly") is the body that is subject to a proceeding for federal constitutional violations pursuant to *Ex parte Young*, 209 U.S. 123, 160-61 (1908).

## JURISDICTION AND VENUE

18.     Jurisdiction is conferred on this Court for the resolution of the questions presented here by virtue of 28 U.S.C. § 1343(a)(4) (to recover damages, or to secure equitable or other relief, for the protection of civil rights); 28 U.S.C. § 1651(a) (injunctive relief); 28 U.S.C. §§ 2201 and 2202 (declaratory relief, and other necessary or proper relief based upon a declaratory judgment); 42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the United States Constitution); and 42 U.S.C. § 1988 (award of attorneys' fees and costs).

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

19.     Pursuant to 28 U.S.C. § 1343(a)(3) and (4), the Court has subject matter jurisdiction over the claims asserted by Plaintiffs because this action is brought to redress deprivations under color of State law, statute, Executive Order, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the United States Constitution.

20.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental and pendent subject matter jurisdiction over the State law claims asserted by Plaintiffs because the State law claims, based upon Defendants' violations of New York State Executive Law § 29-a, are so related to the other claims in this action over which the Court has original subject matter jurisdiction, and arise from a *common nucleus of operative facts*, that the State law claims form part of the same case or controversy under Article III of the United States Constitution (*U.S. Const. art. III*).

21.     The request for declaratory relief herein is founded in part on Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 2202.

22.     The jurisdiction of this Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, as well as 29 U.S.C. § 2202.

23.     The Western District of New York is the proper venue for this action because the Plaintiffs' claims arose within the geographical boundaries of the Western District of New York within the meaning of 28 U.S.C. § 1391(b).

24.     The Western District of New York has jurisdiction to render the equitable and injunctive relief sought in this complaint, and to grant the monetary, financial and compensatory damages sought herein, as well as to make an award of attorneys' fees and costs, and such other relief as may be appropriate and warranted in this matter.

{H2678777.4}                                                                                                                          6

**HOGANWILLIG**
Attorneys at Law
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

## STATEMENT OF FACTS

25.     Plaintiffs, representing a broad cross-section of industries negatively impacted by the actions taken by Defendants, or by the inaction of Defendants,  under the flawed justification of the COVID-19 pandemic, including government forced shutdowns, forced restrictions upon patrons and persons, and with the exception of Plaintiffs Karate Ken's and SoonerTunes, are licensed by the New York State Liquor Authority ("SLA") to serve alcoholic beverages, as those Plaintiffs' primary businesses concern the sale and/or dispensing of alcoholic beverages within the meaning of the prohibitions in the relevant Executive Orders.

26.     The Plaintiffs which are licensed by the SLA to serve alcoholic beverages also offer live music and entertainment to their respective patrons.

27.     Plaintiffs Pharaohs and Body Shop, in addition to engaging in the sale of food and/or alcoholic beverages, also provide live entertainment in the form of exotic dancing.

28.     Plaintiff Karate Ken's, although engaging in neither the sale of food and/or alcoholic beverages, nor the provision of live entertainment in the form of exotic dancing, alternatively provides martial arts lessons and yoga classes to its students and clients of all ages.

29.     Plaintiff SoonerTunes, although engaging in neither the sale of food and/or alcoholic beverages, nor the provision of live entertainment in the form of exotic dancing, alternatively provides DJ and karaoke services to establishments engaging in the sale of food and/or alcoholic beverages, including the Plaintiff establishments named herein, and depends upon the ability of such venues to host live entertainment services such as Plaintiff SoonerTunes provides.

30.     The business operations of each of the Plaintiffs have been unduly and profoundly negatively impacted by the continuing actions taken by Defendants, ostensibly in response to and

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 |  AMHERST, NEW YORK 14068
Phone: 716.636.7600  |  Toll Free: 800.636.5255  |  Fax: 716.636.7606 | www.hoganwillig.com

improperly justified the COVID-19 pandemic, and Plaintiffs have been forced to cease, curtail, and/or limit their respective business operations pursuant to the actions and inactions of and by Defendants, as ratified and enforced by Defendant James.

31.     The relevant Executive Orders, as interpreted and enforced by Defendant James, have unreasonably restricted and sought to restrict Plaintiffs' activities.

32.     Defendant James, who was elected by the People of the State of New York to enforce the laws and hold elected officials accountable for their actions, has, as the evidence will show, abdicated her role in that regard, and has permitted Defendant Governor Cuomo to act in a manner contrary to the doctrine of Separation of Powers inherent in both the United States and New York State Constitutions.

33.     Defendant James, in contravention to her duties and charge as New York State Attorney General, has permitted, ratified, failed to oppose, failed to contest repeated actions of the Governor who has been unlawfully legislating from the Executive Chamber; who has taken over the role of the New York State Assembly and New York State Senate and has been issuing as "Executive Orders" mandates that have been violating the rights of the Plaintiffs herein, indeed, the citizenry at large in the State of New York, that constitutionally fall within the proper purview of the Legislative Branch of government.

34.     As of the filing of this complaint, Plaintiffs are aware of no fewer than fifty six (56) "Executive Orders" that have been issued solely and entirely by Defendant Governor Cuomo, without review, debate and careful consideration of both houses of the New York State Legislature, all with the imprimatur of Defendant Attorney General Leticia James.

35.     The People of the State of New York have duly elected representatives in the form of Assembly members and Senators to make and pass laws, to debate and consider

{H2678777.4}

**HoganWillig**
Attorneys at Law
2410 NORTH FOREST ROAD| SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

8

important questions, to collectively superintend the welfare of the populace, and to safeguard the economies and liberties of the constituents of the State of New York.

36.     By failing to uphold the Constitutions of the United States of America and State of New York, Defendants Attorney General James and Governor Cuomo have violated their respective oaths of office, and have permitted the State of New York to take on the governmental attributes of a monarchy whereby governmental legislative authority rests in the hands of a single person, the Governor, rather than in the 150 duly elected members of the New York State Assembly and 63 duly elected members of the New York State Senate.[1]

37.     By failing to exert their authority, and to the extent they have attempted to delegate non-delegable legislative authority to a single executive, namely the Defendant Governor, Defendants New York State Assembly and New York State Senate have violated their respective oaths of office, and have permitted the State of New York to take on the governmental attributes of a monarchy whereby governmental legislative authority illegitimately rests in the hands of a single person, the Governor, rather than in the duly elected members of the New York State Assembly and New York State Senate.

38.     The quality of "laws" that have emanated from Defendant Governor Cuomo in the name of "Executive Orders" has torn at the fabric on the New York State economy, destroyed and severely and perhaps irreparably impaired commerce, and devastated the businesses of Plaintiffs.

39.     Plaintiffs are owned by individuals, by citizens of the State of New York, who have, in some instances, invested their life savings and their financial futures in businesses, that they have worked to build up over years, only to have that investment decimated by Executive

---

[1] As of the date of the filing of this Complaint, there are four (4) vacant seats in the New York State Assembly and two (2) vacant seats in the New York State Senate. At full capacity, those bodies would number 150 and 63, respectively.

{H2678777.4}

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

9

Orders issuing from one man, from one office, and without the benefit of committee votes and debates and the collective wisdom of the two chambers of the state legislature, and without the opposition or challenge of New York States highest elected law enforcement official, the Attorney General.

40.     In fact, the Executive Orders and associated guidance and promulgations issued in connection therewith have mandated the total and/or partial suspension of business at establishments holding liquor licenses, and even those not holding liquor licenses, which establishments include those owned by Plaintiffs.

41.     Defendant Governor has, by fiat, created inconsistent "phase-in" schedules which permit some businesses, but not others, from opening and/or even partially opening.  Plaintiffs herein that are bowling alleys, billiard parlors and physical fitness studios/gyms are not part of any phased reopening.

42.     The so-called Executive Orders are vague, inconsistent and contradictory, resulting in operational chaos for the Plaintiffs herein.

43.     Despite this fact, each of the Plaintiffs, as applicable, are attempting to operate their businesses in compliance with safety regulations as they understand them, and in a manner which exceed the protocols and restrictions issued by the State of New York and Defendants, in order for their respective businesses to return to profitability, but under the constant fear and subject to the constant threats by governmental agencies of being shut down, under the alleged authority of the Executive Orders.

44.     Executive Order 202, issued on March 7, 2020, in part, declared a State Disaster Emergency for the State of New York based upon the fact that travel-related cases and community contact transmission of COVID-19 had been documented in New York State.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

45.     Issued on March 12, 2020, Executive Order 202.1 thereafter mandated that any gathering or event where anticipated attendance was to exceed five hundred (500) people must be postponed, or cancelled, for a minimum of thirty (30) days.

46.     On or about April 26, 2020, Defendant Cuomo announced a plan to re-open New York's businesses, "New York Forward," with the re-opening of certain sectors/industries and the subsequent loosening of restrictions to be considered on a regional basis as each region of New York thereafter met the criteria allegedly necessary to protect public health.

47.     The phased-in plan permits a limited number of businesses to re-open under heavy restrictions, with at least two (2) weeks in between phases, and purports to prioritize businesses considered to have a greater economic impact and inherently low risks of infection.

48.     Phase Three permitted the re-opening of those businesses/establishments operating in the restaurant and food services industries.

49.     On June 16, 2020, the Western New York region entered Phase Three.

50.     The Plaintiffs' businesses are each located within the Western New York region.

51.     On June 6 and 7, 2020, respectively, Executive Orders 202.38 and 202.39 modified earlier Executive Orders to permit restaurant or bars to serve patrons food or beverages on-premises in an outdoor capacity, with indoor service being prohibited.

52.     Executive Orders 202.38 and 202.39 did not prohibit the re-opening and/or operation of a bar or restaurant, including Plaintiffs Pharaohs Body Shop, which provide live exotic dancing entertainment to their respective customers.

53.     Thereafter, New York State issued Food Service Guidelines for Employers and Employees, which permitted indoor on-premises service to resume, so long as bars and restaurants complied with the relevant guidelines.

{H2678777.4}

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

54.     Pursuant to the Food Service Guidelines, on-premises indoor service of food and beverages became permissible in those industries operating in a region which re-opened in Phase Three, and thus, applied to Plaintiffs' re-opening.

55.     On June 18, 2020, pursuant to Executive Order 202.43, businesses engaging in the sale and service of alcoholic beverages were required to inspect, monitor and supervise the area within one hundred (100) feet the licensed premises to ensure that any consumption of food or beverage comports with the applicable open container ordinances, and the social distancing and face covering requirements set forth for such businesses in any applicable Executive Order, regulation, law, Department of Health ("DOH") guidance, and/or SLA guidance.

56.     The Plaintiffs operating licensed bars and/or restaurants, or which are otherwise licensed to sell alcoholic beverages. re-opened and comported with all social distancing, mask wearing, and hygiene protocols and guidance promulgated by Defendants.

57.     Defendants have only sought to tighten their control on the restaurant and food services industries, among others, which others include Plaintiffs Karate Ken's and SoonerTunes, by promulgating additional, and more restrictive, Executive Orders, and/or restricting the re-opening of certain businesses beyond even the completion of Defendant Cuomo's New York Forward Plan.

58.     Pursuant to Executive Order 202.52, effective July 17, 2020, all licensed establishments with on-premises privileges shall not serve alcoholic beverages unless such beverages are accompanied by the purchase of a food item.

59.     The stated purpose of Executive Order 202.52 is to restrict the congregation and mingling that arises in a bar service/drinking environment.

{H2678777.4}

12

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

60.    The SLA guidance further clarified the overbroad and vague language of Executive Order 202.52, in relevant part, as follows:

"Purchase of a food item which is consistent with the food availability requirement of the license under the Alcoholic Beverage Control Law" shall mean that for each patron in a seated party, an item of food must be purchased at the same time as the purchase of the initial alcoholic beverage(s).

However, one or more shareable food item(s) may be purchased, so long as it/they would sufficiently serve the number of people in the party and each item would individually meet the food standard below.

A food item which is consistent with the food availability requirement of the license under the Alcoholic Beverage Control Law" shall mean:

For manufacturers with on premises service privileges: sandwiches, soups or other such foods, whether fresh, processed, pre-cooked or frozen; and/or food items intended to compliment the tasting of alcoholic beverages, which shall mean a diversified selection of food that is ordinarily consumed without the use of tableware and can be conveniently consumed, including but not limited to: cheese, fruits, vegetables, chocolates, breads, mustards and crackers

For on premises retailers with a food availability requirement, including restaurants and taverns: sandwiches, soups or other foods, whether fresh, processed, precooked or frozen."

61.    Defendant Cuomo's most recent Executive Orders, as supplemented by the applicable SLA guidance and enforced by Defendant James, effectively mandates tavern and bar owners to reconfigure their facilities to serve food, in establishments where the premises are situated only for the sale and service of alcoholic beverages.

62.    Defendants' directives permitting indoor dining with fifty percent (50%) occupancy and other social distancing measures, coupled with the new rules which require food sales to take place in a bar service/drinking only environment, disproportionately impact, and discriminate against bars and restaurants, including Plaintiffs' establishments, which establishments are representative of the many industries negatively impacted by the COVID-19 pandemic and subsequent governmental shutdowns.

{H2678777.4}

13

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD| SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

63.     Upon information and belief, Defendants permitted establishments, including those owned by Plaintiffs, to re-open, including with live entertainment, as applicable.

64.     Upon information and belief, Defendants have not permitted establishments, including Plaintiffs Pharaohs and Body Shop, to re-open fully with the purpose of providing live exotic dancing entertainment.

65.     Plaintiffs Pharaohs and Body Shop, as well as the remaining Plaintiffs, have endeavored to implement certain procedures and protocols to comport with the relevant Executive Orders and associated guidelines.

66.     To a significant degree, these Plaintiffs have implemented protocols and procedures which exceed the mandates of Defendant Governor Cuomo, yet they continue to operate under the threat of imminent fines and closures.

67.     However, due to the relevant restrictions, Plaintiff Body Shop never re-opened after shutting its doors at the beginning of the COVID-19 pandemic, in early March, as the SLA guidance prohibited Plaintiff from re-opening with exotic dancing entertainment.

68.     Plaintiff Pharaohs similarly closed its doors in July, 2020 due to the prohibition on exotic dancing, and experienced substantial injuries to its revenue by reason thereof, but have attempted to re-open on a limited basis in the hope of staying alive.

69.     Plaintiffs' businesses were effectively rendered non-operational, particularly in consideration of their finances, by Defendants' Executive Orders and associated guidance.

70.     Upon information and belief, the SLA, on behalf of Defendant Cuomo, updated its website to contain a Frequently Asked Questions ("FAQ") section, which directed business owners to review the Department of Health's ("DOH") guidelines relating to live indoor entertainment.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

71.     Upon information and belief, the SLA, on behalf of Defendant Cuomo, modified the FAQ to expressly prohibit performance of exotic dancing, despite its own guidance which indicated that performance of other live, indoor entertainment was permissible.

72.     Although it is unclear as to whether an FAQ is legally binding, seemingly, the SLA's prohibition on exotic dancing, issued on behalf, and at the behest, of Defendant Cuomo, represents a content-based regulation on expression, thus discriminating against exotic dancing over live music and singing.

73.     Defendants' arbitrary, capricious, and unreasonable rule has eviscerated Plaintiffs Pharaohs' and Body Shop's First Amendments rights, as well as the rights of independent contractors, including dancers, employed by Plaintiffs Pharaohs and Body Shop.

74.     Defendants' actions in previously shutting down all establishments, including those with liquor licenses, significantly and adversely affected the finances of Plaintiffs.

75.     Further, Defendants' targeted shut down of establishments, including Plaintiff Body Shop, constitutes an unlawful content based restriction on a form of expression afforded protection under the First Amendment to the United States Constitution, and Article I § of the New York State Constitution.

76.     Targeted shutdowns will, ultimately, only amplify the financial damage to Plaintiffs as well as other service providers, restaurants, bars, venues, and gentlemen's clubs operating under the same restrictive directives.

77.     If Plaintiffs are not allowed to re-open and operate akin to those businesses in the Western New York region that have been permitted to re-open with lesser restrictions, there is a substantial risk that Plaintiffs will permanently go out of business.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

78.     Defendant Cuomo, with complicity on the part of, and enforcement by and through Defendant James, has noted numerous times that businesses will not be returning to "business as usual" and business owners will need to adapt to a "new normal."

79.     It must be stated, that had Defendant Cuomo not issued and implemented his Executive Orders, Plaintiffs would have exercised their own judgment in establishing safety and health protocols in the best interests of employees, patrons, and other visitors. The populace, including the businesses thereof, do not need the iron hand of governmental authority to compel business owners to take precautions under these circumstances; over the course of dozens of epidemics and pandemics that have afflicted the State of New York, government's role was to educate the People, and allow the People to act in their own best interests.

80.     Plaintiffs are capable of acting in their own self-interests and have a right to do so without having the will of Defendants, as enforced by Defendant James, imposed upon them in the manner present in this case.

81.     Defendant Cuomo's fervid use of executive authority is shown by his issuance of at least fifty-six (56) Executive Orders to date, and hundreds of, albeit temporary, sweeping changes to various State laws, in response to the COVID-19 pandemic. As the COVID-19 pandemic continues to subside, Defendant Cuomo continues to wield his executive powers derived from the acquiescence of a complicit legislature, Defendants Senate and Assembly.

82.     Implicit in all written constitutions, is the concept of a structural separation of powers and the doctrine of nondelegation, which establishes that one branch of government must not authorize another branch of government or other entity to exercise the power or function which it is constitutionally authorized to exercise itself.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

83.    Here, Defendants Assembly and Senate have committed numerous Fourteenth Amendment violations, as further complained of herein.

84.    Defendant Governor Cuomo's willingness to circumvent constitutional due process in the name of "public emergency", justifying an emergency passage without legislative committee process and debate under the "message of necessity" doctrine, and Defendants New York State Assembly and Senate's willingness to acquiesce thereto, in the name of "public emergency" has been demonstrated in the past.

85.    When the Governor wanted to pass a comprehensive gun control bill, and avoid the constitutionally mandated process of bills being proposed, and committees working on the wording, and debates being had, under the notion that gun violence was an urgent emergency that warranted the avoidance of constitutional strictures, he had the so-called "Safe Act" submitted by a legislator at Defendant Governor's behest[2], and passed in an extraordinarily truncated time period of twenty four (24) hours, bypassing public scrutiny and public hearings usually attendant to such extreme legislation, pushing the definitions of "emergency" and "necessity" to, as of that time (2013), an untested limit.

86.    The public outcry over Defendants Governor Cuomo and both chambers of the New York State legislature, over the bypassing of legislative debate and constitutional process, continues to this very day.

87.    The then extraordinary – and perceived by a great many as constitutionally repugnant - acts of Defendants regarding the overnight Safe Act passage is nothing compared to what New York has seen in these past few months.

88.    Under the guise of Executive Law § 29-a, as interpreted and sought to be enforced by Defendant James, the New York State Legislature has unconstitutionally delegated its

---

[2] See Assembly Bill A2388 and Senate Bill S2230.

{H2678777.4}

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 |  AMHERST, NEW YORK 14068
Phone: 716.636.7600  |  Toll Free: 800.636.5255  |  Fax: 716.636.7606  |  www.hoganwillig.com

17

legislative authority to Defendant Cuomo, as it has granted Defendant Cuomo limitless discretion to issue Executive Orders having the force of law.

89.     The Governor's exercise of emergency power during the COVID-19 pandemic should have started with Defendant Cuomo convening the New York State Legislature on an extraordinary basis, to enable the Legislature to take whatever measures were deemed reasonably necessary, but in a constitutional framework. The Governor is neither a Czar, nor a king; rather, he is the chief executive of one of the three branches of New York State Government.

90.     Executive Law § 29-a is in direct violation of the separation of powers doctrine, as the New York State Constitution vests sole legislative authority in Defendants Senate and Assembly, and is therefore facially and substantively unconstitutional as an improper delegation of legislative power upon Defendant Cuomo by Defendants Senate and Assembly, i.e. the New York State Legislature.

91.     Defendants' lockdown mandates employed mind-numbingly arbitrary and financially crushing distinctions.

92.     This nation, and the State of New York have endured many epidemics and outbreaks in the past, including pathogens with far greater lethality (at the time) than the Corona virus/COVID-19.

93.     Never before in the history of the State of New York have such restrictive measures been taken, has the economy itself been forced to shut down; never before has the judgment of the people to do what is in their own best interest been taken away from them with government stepping in; never before have the interactions between people and businesses been micromanaged and restricted under penalty of fines, shutdowns and legal process, as they have

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

been since Defendant Cuomo has usurped all legislative and executive authority as alleged herein, and by "never before", I include times of presence of such diseases as:

- 1793-1802: Yellow Fever
- 1832-66: Cholera
- 1858: Scarlet Fever
- 1906: Typhoid
- 1918: Spanish Flu
- 1921-25: Diphtheria
- 1916-1955: Polio
- 1981-91: Measles
- 1981-2000: AIDS/HIV
- 2002-2004: SARS
- 2009: Mumps
- 2009-10: H1N1/Swine Flu
- 2017-18: Flu
- 2020: COVID-19

94.     Defendants' overreaction has caused Plaintiffs' small establishments to shut down while liquor stores, and large grocery and retail establishments are up and running, and quite possibly, flourishing and more profitable than pre-COVID-19.

95.     The economy of the State of New York survived the horrors of prior epidemics and outbreaks without the infliction of monarchical rule and martial law.

96.     The vast majority of the residents of the State of New York survived the horrors of prior epidemics and outbreaks without the infliction of monarchical rule and martial law.

97.     Defendants' ignorance about the complexity of economic life is shocking, as is their hypocrisy. Defendants are gainfully employed, receiving salaries paid for by taxpayers, and have none of the fears of bankruptcy and financial ruin that currently plague Plaintiffs.

{H2678777.4}                                                                                                    19

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD |  SUITE 301  |  AMHERST, NEW YORK 14068
Phone: 716.636.7600  |  Toll Free: 800.636.5255  |  Fax: 716.636.7606  |  www.hoganwillig.com

98.     It must be underscored, that to care about the economy is to care about human life, as the economy is the sustenance of life. To Plaintiffs, every business, especially their own, are essential, however, absurd social distancing protocols make operating virtually impossible.

99.     While Plaintiffs have in good faith comported with and attempted to comport with Defendants' Executive Orders and associated guidelines, keeping customers and employees six (6) feet apart render Plaintiffs' businesses unworkable, an insurmountable dilemma.

100.    The arbitrary distinctions are based upon medical disinformation, publicized by an agenda-driven media conglomerate of news networks and complicit journalists.

101.    The United States' population is currently 331,000,000, with the global population totaling 7.8 billion.

102.    In the U.S., 12% of the population is over seventy-five (75) years of age.

103.    As of July 26, 2020, approximately 145,000 deaths have been associated with COVID-19. Of these deaths, 12% percent are between the ages of 55-64, 21% are of people 65-74, 27% are of those between 75-84 and 33% are those that are 85 or older. Thus, 81% of all deaths attributed to COVID-19 consisted of individuals that were 65 years of age or older.

104.    Additionally, comorbidities, including obesity, hypertension, diabetes, chronic lung disease, and cancer, are important in determining whether an individual is likely to succumb to COVID-19.

105.    Approximately 80-90% of COVID-19 infections are not severe and are relatively routinely handled with, or without, any kind of medical care.

106.    In the U.S., there are approximately 2.9 million deaths per year from all sources.

107.    In the World, there are approximately 60 million deaths per year. At the present time, COVID-19 is responsible for approximately 650,000 deaths worldwide.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

108.    As a result, 93% of the COVID-19 deaths in this country are individuals ages fifty-five (55) or older. In other words, if a person is under age 55, the probability of death is extremely low. Of the deaths in this country, only seven percent (7%) are of individuals that under the age of 55.

109.    The probability of an individual contracting COVID-19 from another person increases with both age and comorbidity. In other words, not only does age impact whether a person is likely to die or not, but it also impacts the probability of a person being infected with COVID-19 at the outset. The same is true with respect to comorbidities, which affect not only the probability of death but the probability that a person might contract COVID-19 from a transmitter of the disease.

110.    Given the 7.8 billion world population, the probability of contracting COVID-19 and actually dying from the disease is currently .017%; in the U.S., the probability it is approximately .067%, or one chance out of 1,500.

111.    However, even the above data is misleading as the overall percentage, for persons under the age of sixty-five (65), the probability is less than one (1) out of 7,500 individuals.

112.    This medical information is not intended to diminish the suffering, or calamity, of the COVID-19 pandemic, but is simply illustrative of the arbitrariness of Defendants' conduct, Executive Orders, directives, and associated guidance.

## AS AND FOR A FIRST CLAIM FOR RELIEF:
## DECLARING N.Y.S. EXECUTIVE LAW § 29-A TO BE UNCONSTITUTIONAL

113.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

114.    Pursuant to the doctrine of nondelegation, implicit in all written constitutions, one branch of government must not authorize another branch of government to exercise the power or function which it is constitutionally authorized to exercise itself.

115.    Here, Defendant Cuomo's expansive power was derived from the Legislature's, i.e. Defendants Assembly and Senate, unlawful modification of the New York Executive Law. Effectively, the Legislature unlawfully delegated its authority to the Executive branch.

116.    The Guarantee Clause, Article IV, Section 4 of the United States Constitution, provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or the Executive (when the Legislature cannot be convened) against domestic Violence." This Clause ensures that individual states are run as representative democracies, as opposed to a monarchy.

117.    Defendant Cuomo has operated New York State in violation of the Guarantee Clause, as his broad authority permitted Defendant to take tyrannically control the Executive and Legislative Branches.

118.    The New York State Constitution provides for a complete distribution and separation of powers among the three "co-ordinate and co[-]equal branches" of government. *County of Oneida v. Berle*, 49 N.Y.2d 515, 522 (1980); *see also LaGuardia v. Smith*, 288 N.Y. 1, 5-6 (1942); *N.Y. Const., art. III, sec. 1; art. IV, sec. 1; and art. VI.*

119.    To wit, Article III, Section 1 of the New York State Constitution provides that "[t]he legislative power of this state shall be vested in the [S]enate and [A]ssembly," whereas Article IV, Section 1, of the New York State Constitution provides that: "The executive power shall be vested in the [G]overnor[.]" *N.Y. Const., art. III, sec. 1; N.Y. Const., art. IV, sec. 1.*

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

120.    "[T]h[is] separation of powers 'requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies.'" *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 821-822 (2003) (citing *Bourquin v. Cuomo*, 85 N.Y.2d 781, 784 (1995)). Moreover, and as the New York Court of Appeals has noted, "a foundation of free government is imperiled when any one of the coordinate branches . . . interferes with another." *County of Oneida*, 49 N.Y.2d at 522.

121.    Notably, *nowhere* in the New York State Constitution is the Defendant Cuomo, given or delegated any legislative authority; rather, Article IV, Section 3 of the New York State Constitution provides, in relevant part: "The [G]overnor shall have power to convene the [L]egislature, or the [S]enate only, on extraordinary occasions." *N.Y. Const., art. IV, sec. 3.*

122.    As a basis for his authority to issue Executive Orders responsive to the COVID-19 pandemic, Defendant Cuomo expressly cites to New York State Executive Law § 29-a.

123.    New York State Executive Law § 29-a purports to grant Defendant Cuomo legislative authority vis-à-vis his claimed authority to issue Executive Orders in response to the COVID-19 pandemic having the full force and effect of law.

124.    The provisions of Executive Law § 29-a unlawfully broadened Defendant Cuomo's authority to act during official state disasters beyond the COVID-19 crisis.

125.    Defendant Cuomo's fervid use of executive authority is shown by his issuance of fifty-six (56) Executive Orders to date, and hundreds of sweeping changes to various State laws. As the COVID-19 pandemic continues to subside, Defendant Cuomo continues to wield his executive powers derived from the acquiescence of a complicit legislature.

126.    Notwithstanding the above, Executive Law § 29-a provides that this authority is "[s]ubject to the state constitution, the federal constitution and federal statutes and regulations;"

it does not require Defendant Cuomo to obtain legislative approval prior to declaring a State Disaster Emergency, nor does it authorize the Legislature to limit or revoke Defendant Cuomo's authority to so issue such Executive Orders. In fact, Executive Law § 29-a(2)(a) provides that: "no suspension or directive shall be made for a period in excess of thirty days, provided, however, that upon reconsideration of all of the relevant facts and circumstances, the [G]overnor may extend the suspension for additional periods not to exceed thirty days each."

127.    Executive Law § 29-a effectively gives Defendant Cuomo *carte blanche* to issue Executive Orders having the full force and effect of law, and Defendant Cuomo has so taken and utilized this statutory authority to impose unconstitutional restrictions on the citizens and businesses located within, and even without, the State of New York.

128.    Under the guise of Executive Law § 29-a, the New York State Legislature has unconstitutionally delegated its legislative authority to Defendant Cuomo, particularly given that, just four (4) days before issuing Executive Order 202 through which Defendant Cuomo declared a State Disaster Emergency in the State of New York State, the New York State Legislature passed a bill *at Defendant Cuomo's request*, which Defendant Cuomo then signed into law, to expand Defendant Cuomo's emergency management power and authority.

129.    The Governor's exercise of emergency power during the COVID-19 pandemic should have started with Defendant Cuomo convening the New York State Legislature on an extraordinary basis, to enable the Legislature to take whatever measures were deemed reasonably necessary, but in a constitutional framework.

130.    Executive Law § 29-a is in direct violation of the separation of powers doctrine, as the New York State Constitution vests sole legislative authority in the New York State Legislature, and is therefore facially and substantively unconstitutional.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

131.    Defendants, and in particular Defendants Senate and Assembly, will undoubtedly argue that they enjoy certain legislative immunity with respect to their actions, vis-à-vis the amendment of Executive Law § 29-a only four (4) days prior to Defendant's issuing Executive Order 202 (which declared a State Disaster Emergency in the State of New York), in delegating their legislative authority to Defendant Cuomo for the duration of the COVID-19 pandemic.

132.    Under the Supreme Court's functional test for determining the applicability of absolute legislative immunity, "whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007); *see also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). In particular, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at 54.

133.    Notwithstanding the above, a defendant's entitlement to legislative immunity does not depend solely on whether the defendant's acts giving rise to the alleged violation were "taken in the sphere of legitimate legislative activity." *State Emples. Bargaining Agent Coalition*, 494 F.3d at 88 (citing *Bogan*, 523 U.S. at 54). Instead, in considering whether the doctrine of legislative immunity is available to foreclose claims for injunctive relief in official-capacity suits, the Court must also look more specifically to whether granting the particular relief sought by Plaintiffs would *enjoin* defendants in their legislative capacities. *Id.* (emphasis added).

134.    Thus, before Defendants can invoke legislative immunity to defeat Plaintiffs' claims for relief, Defendants must show both that: (i) the acts giving rise to the harm alleged in the Complaint were undertaken when defendants were acting in their legislative capacities; and

{H2678777.4}                                                                                          25

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

(ii) the particular relief sought would enjoin Defendants in their legislative capacities, and not in some other capacity in which they would not be entitled to legislative immunity. *Id.* at 89.

135.    Plaintiffs do not dispute that Defendants Senate and Assembly were acting in their legislative capacities when they amended Executive Law § 29-a so as to delegate sole legislative authority regarding the State's response to the COVID-19 pandemic to Defendant Cuomo.

136.    Rather, it is the particular relief being sought by Plaintiffs in the instant matter that acts as a bar to Defendants' invocation of their otherwise valid legislative immunity.

137.    The relief being sought by Plaintiffs' in this matter is primarily declaratory and injunctive in nature; specifically, as against Defendants Cuomo, Senate, and Assembly and under Plaintiffs' First Claim for Relief, Plaintiffs are seeking a declaration of this Court providing Executive Law § 29-a to be facially and substantively unconstitutional, as an unconstitutional delegation of legislative power to Defendant Cuomo by Defendants Senate and Assembly.

138.    If this Court were to so grant Plaintiffs' First Claim for Relief, Defendants Senate and Assembly surely would not be "enjoin[ed] in their legislative capacities," thereby defeating the second of Defendants Senate's and Assembly's requirements to invoke legislative immunity. *State Emples. Bargaining Agent Coalition*, 494 F.3d at 89.

139.    To be clear, this Court's grant of Plaintiffs' request for the above relief would have effectively no impact upon Defendants Senate and Assembly moving forward; to the contrary, the only impact such declaratory and injunctive relief, if granted, would have, would be to invalidate the scope and breath of Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James.

140.    By reason of the foregoing, any attempted invocation by Defendants of their legislative immunity would be improper, baseless, and legally defective, as this Court's grant of

{H2678777.4}

26

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

the requested declaratory and injunctive relief would not enjoin Defendants in their legislative

capacities, to the extent that Defendants did act, or have been acting, in such capacities.

141.    Accordingly, Plaintiffs seek a declaration of this Court providing New York State

Executive Law § 29-a to be so facially and substantively unconstitutional, as an unconstitutional

delegation of legislative power to Defendant Cuomo by the New York State Legislature.

**AS AND FOR A SECOND CLAIM FOR RELIEF:**
**DEFENDANTS' VIOLATION OF EXECUTIVE LAW §29-a**

142.    Plaintiffs repeat and re-allege each and every allegation in the preceding

paragraphs of this Complaint, as if fully set forth herein.

143.    New York State Executive Law § 29-a(1) grants Defendant Cuomo the authority,

by the issuance of Executive Order(s), to (emphasis added):

> [T]emporarily suspend any statute, local law, ordinance, or orders, rules or
> regulations, . . . of any agency during a state disaster emergency, if compliance
> with such provisions would prevent, hinder, or delay action *necessary to cope*
> *with the disaster or if necessary to assist or aid in coping with such disaster*.

144.    Executive Law § 29-a(2) also provides, in relevant part (emphasis added):

> Suspensions shall be subject to the following . . . limits[:] . . . no suspension or
> directive shall be made which is not in the interest of the health or welfare of the
> public *and which is not reasonably necessary to aid the disaster effort*; [and] . . .
> any such suspension, order or directive shall provide for the *minimum deviation*
> from the requirements of the statute, local law, ordinance, order, rule or regulation
> suspended consistent with the goals of the disaster action deemed necessary[.]

145.    New York State Executive Law § 29-a thus purports to grant Defendant Cuomo,

by the issuance of Executive Order(s), emergency powers so as to suspend certain laws, and so

as issue certain directives, when a State Disaster Emergency has been declared.

146.    Although Executive Law § 29-a confers certain powers upon Defendant Cuomo

(assuming, *arguendo*, it is constitutional), it also imposes certain restrictions upon him; namely,

that actions taken pursuant to Defendant Cuomo's authority thereunder be "reasonably necessary

**H O G A N W I L L I G**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

to aid in the disaster effort," and that such actions provide for the "minimum deviation" from the suspended statute, law, etc., while remaining consistent with the goals of the disaster action.

147.   The actions of Defendants in threatening to shutter Plaintiffs' businesses via the Executive Orders, and the purported authority of Defendant James to enforce violations thereof as a violation of New York State Public Health Law § 12 and under threat of revocation of Plaintiffs' liquor licenses, are neither reasonably necessary to combat the COVID-19 pandemic, nor the minimum deviation from any suspended statute, law, etc., such that Defendants' actions remain consistent with the goals of the COVID-19 response.

148.   Put differently, neither the uniqueness nor the severity of the COVID-19 pandemic justifies the austere measures taken by Defendant Cuomo in response thereto.

149.   In fact, there is an irony in the State of New York and Defendant Cuomo justifying Defendant Cuomo's restrictions on the "uniqueness" of the COVID-19 pandemic, when it is the restrictions themselves that make the COVID-19 pandemic so unique.

150.   Defendant Cuomo has, to date, issued at least fifty-six (56) Executive Orders since initially declaring a State Disaster Emergency on March 7, 2020.

151.   Defendants' actions in issuing the Executive Orders, and in thereafter issuing purportedly clarifying guidance and/or attempting to enforce the same, were neither reasonably necessary, nor the minimum deviation from any suspended statute, law, etc., so as to allow the State of New York to do its part in combatting the COVID-19 pandemic.

152.   From the date of the issuance of Executive Order 202, and despite the State of New York being in Phase 4 of Defendant Cuomo's "New York Forward Re-Opening Plan," the severe, arbitrary, and unreasonable restrictions placed upon certain establishments have not been revised to reduce the strain thereof, despite the changing understanding of the nature of the

{H2678777.4}

28

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD| SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

COVID-19 pandemic in the intervening months. What's more, there is no end in sight with respect to these restrictions, and no attempt has been made by any of the Defendants, to date, to advise these businesses when such restrictions may be lifted, or at the very least lessened.

153.   In the United States, the burden is always on the government to justify its actions, not on the citizenry to wait out its deprivations; this is the ingenious method we have devised to ensure that our laws are cloaked with good faith and founded in rational purpose.

154.   In the normal course, the State may police the marginal details of its sphere so long as its regulations are related to a legitimate government interest. However, when the State enacts laws that burden fundamental rights, not only must the laws promote a compelling government interest; they must do so in the manner least burdensome to those rights.

155.   In addition, separate and apart from Defendant Cuomo having exceeded his authority under New York State Executive Law § 29-a by issuing Executive Orders out of reasonable necessity as is required, Plaintiffs have gone above and beyond to take steps to ensure a clean and healthy work environment for their employees, customers, and the like.

156.   The failure to narrowly tailor the restrictions imposed in the Executive Orders has also caused significant economic and societal harm without sufficient evidence showing that any of the restrictions on businesses, and particularly those which are applicable to only some businesses in the State of New York and not others, have helped to "flatten the curve."

157.   The Legislature violated of the doctrine of non-delegation, in yielding its power over the Executive Branch via Executive Law § 29-a.

158.   By reason of the foregoing, Defendant Cuomo has far exceeded his executive authority under Executive Law § 29-a, even by the standards set forth by the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

{H2678777.4}

29

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

159.     Accordingly, Plaintiffs seek a declaration of this Court providing that Defendant Cuomo's actions exceed the scope of his powers under New York State Executive Law § 29-a to the extent it is legal, and not found by this Court to be unconstitutional.

## AS AND FOR A THIRD CLAIM FOR RELIEF:
## VIOLATION OF FIRST AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983

160.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

161.     The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

162.     State and local governments are subject to the provisions against abridging the freedom of speech through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

163.     The SLA's guidance and FAQ which banned licensed restaurants and bars from providing exotic dancing, and which were issued on behalf, and at the behest, of Defendant Cuomo, and the looming threat that liquor license holders may lose their licenses for operating their establishments, violate Plaintiffs Pharaohs' and Body Shop's First Amendment rights and Fourteenth Amendment right of Equal Protection, as well as the New York State Constitution.

164.     It is well settled that the speech at issue here, non-obscene exotic dancing, is protected expression under the First Amendment. In fact, adult speech is expressly accepted as protected expression.

165.     Plaintiffs Pharaohs' and Body Shop's has a distinct legal right to provide live exotic dancing to its patrons, and the SLA guidance, as enforced by Defendant James, has no sound legal basis, or other grounds, for banning such live entertainment while simultaneously permitting other forms of live entertainment, including live bands, music, and singers.

{H2678777.4}

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

166.    Defendants' actions constitute unconstitutional content-based restrictions, which are subject to a strict scrutiny standard.

167.    Defendants' content-based restrictions on certain forms of expression are not only arbitrary and capricious, but more importantly, Plaintiffs have a clear legal right not to be subject to the discriminatory judgment and directives by Defendants.

168.    Plaintiff Body Shop has been prevented from opening since the March 7, 2020 Executive Orders, and the hundreds of executive and agency directives and guidance issued therefrom.

169.    Plaintiff Pharaohs was forced to shutter its doors in July, 2020 due to the detrimental financial impact of Defendants' Executive Orders and associated guidance.

170.    Plaintiffs Pharaohs and Body Shop are suffering irreparable injury now, and certainly in the future, for the sole reason of offering live entertainment in the form of exotic dancing.

171.    Plaintiffs Pharaohs and Body Shop have no remedy, or available avenue, to protect its constitutional rights at issue, other than the injunctive and/or equitable relief herein requested.

172.    Plaintiffs Pharaohs and Body Shop, with absolute certainty, will suffer an irreparable injury including, the impending permanent closure of its establishment, and the violation of its civil rights and liberties as a result of Defendants' arbitrary and baseless decision to preclude exotic dancing from the permissible forms of entertainment available to the bars and restaurants re-opening in the Western New York region.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

173.     Absent an injunction, the harm to Plaintiffs Pharaohs and Body Shop exceeds any plausible harm that Defendants would suffer should Defendants be precluded from enforcing a facially unconstitutional action.

174.     Accordingly, Plaintiffs Pharaohs and Body Shop seeks a declaratory judgment declaring that the prohibition against exotic dancing at licensed gentlemen's clubs, bars, and restaurants is facially unconstitutional as applied to Plaintiffs Pharaohs and Body Shop under the First and Fourteenth Amendments to the United States Constitution and corresponding provisions of the New York State Constitution, together with a preliminary and permanent injunction prohibiting the enforcement by Defendants of such provision and would not be contrary to the public interest.

**AS AND FOR A FOURTH CLAIM FOR RELIEF:**
**VIOLATIONS OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. 1983**

175.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

176.     The actions of Defendants in threatening to shutter Plaintiffs' businesses via the Executive Orders, and the purported authority of Defendant James to enforce violations thereof as a violation of New York State Public Health Law § 12 and under threat of revocation of Plaintiffs' liquor licenses, violate the Due Process Clause of the Fifth and Fourteenth Amendments because they fail to give reasonable direction to people of ordinary intelligence as to what is forbidden under the law, or, at the very least, Defendants are restricting conduct that was never intended to be restricted by Defendant Cuomo's Executive Orders.

177.     This is precisely the dilemma the Due Process Clause's requirement of fair notice seeks to avoid, particularly where, as here, there is no procedure whereby Plaintiffs, and others similarly situated, may challenge the language or meaning of the Executive Orders.

{H2678777.4}

32

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

178.    The Fifth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any person . . . be deprived of life, liberty, or property, without due process of law [(the "Due Process Clause")]; nor shall private property be taken for public use, without just compensation [(the "Takings Clause")]." *U.S. Const. amend. V.*

179.    The Supreme Court has held that "[t]he fundamental principle that laws regulating persons or entities must give fair notice of what conduct is required or proscribed . . . is essential to the protections provided by the Fifth Amendment . . . which requires the invalidation of impermissibly vague laws." *F.C.C. v. Fox Television Stations*, 567 U.S. 239, 240 (2012).

180.    The Fourteenth Amendment to the United States Constitution has been used to apply the protections of the Fifth Amendment to those violations of persons' rights by the States. The Fourteenth Amendment provides, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law" (the "Due Process Clause"). *U.S. Const. amend. XIV.*

181.    "[S]ubstantive due process prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Rochin v.California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)).

182.    Substantive due process, as recognized by the Supreme Court of the United States, therefore allows courts to strike down laws that are unreasonable or arbitrary or without relation to the purpose of the legislation. *See Nebbia v. New York*, 291 U.S. 502 (1934).

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

183.   Even assuming, *arguendo*, that there exists a legitimate State interest in protecting the public's health and welfare, the actions of Defendants are unreasonable, arbitrary, and capricious, and are not the least restrictive means for achieving the State's interests.

184.   Given the types of services being provided by Plaintiffs, Defendants' actions in issuing the Executive Orders, and the purportedly clarifying guidance thereon, bear no relation to the State's purported interest in protecting the public's health and welfare, and are unduly restrictive of Plaintiffs' constitutional rights, as there is no evidence to suggest that Plaintiffs would be placing the public at any greater of a risk of contracting COVID-19 than those same individuals would be at if Plaintiffs were permitted to operate and be fully functional.

185.   Defendant Cuomo's improper exercise of emergency executive power, as interpreted and sought to be enforced by Defendant James, following the emergence of new data, is inflicting upon Plaintiffs, and society at large, irreparable harm.

186.   Executive Order 202 et seq., and the guidance issued pursuant to Defendant Cuomo's "New York Forward Re-Opening Plan," constitute arbitrary, capricious, irrational, and abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests, which are protected by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

187.   Defendant Cuomo, by and through Defendant James, has also violated the Void for Vagueness Doctrine by virtue of issuing vague Executive Orders which lend themselves to arbitrary enforcement with massive repercussions. "[T]he terms of a penal statute . . . must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

188.    Where a law fails to specifically enumerate the practices that are either required or forbidden, such that the "ordinary citizen" does not know what the law requires, said law is void for vagueness. *See Coates v. City of Cincinnati*, 402 U.S. 611 (1971); see also FCC v. FOX Television Stations, Inc., 567 U.S. 239 (2012).

189.    Here, actions of Defendants in threatening to shutter Plaintiffs' business via the Executive Orders, and the purported authority of Defendants James to enforce violations thereof as a violation of New York State Public Health Law § 12 and under threat of revocation of Plaintiffs' liquor licenses, are immeasurably vague, as Plaintiffs (and others similarly situated throughout the State of New York) have had to attempt to interpret the Executive Orders and the guidance issued pursuant to Defendant Cuomo's "New York Forward Re-Opening Plan" to determine what Defendants deem "proper" with respect to re-opening.

190.    Such restrictions as imposed upon Plaintiffs on, but which are not imposed on other businesses and industries currently operating, are arbitrary and not reasonably related to the purpose of preventing the spread of COVID-19, the stated purpose of the Executive Orders.

191.    It is for this reason that Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, have violated Plaintiffs' rights under the Due Process Clause of the Fifth and Fourteenth Amendments.

192.    Accordingly, Plaintiffs seek a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions on Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights.

### AS AND FOR A FIFTH CLAIM FOR RELIEF:
### VIOLATIONS OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. 1983

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

193.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

194.     Procedural due process is similarly a form of due process provided by the Fifth and Fourteenth Amendments, and recognized by the Supreme Court of the United States, which protects from the loss of liberties or property interests without the benefit of a fair procedural process. *See Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

195.     Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and purportedly enforced by Defendant James, are arbitrary, capricious, irrational, and abusive, and unlawfully interferes with Plaintiffs' protected liberty and property interests, which are so protected by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. Moreover, as noted above, Defendants have set forth no possible means by which Plaintiffs' may challenge the language or meaning of the Executive Orders as interpreted, expanded upon, and purportedly enforced by Defendant James.

196.     Effectively, Defendants have stripped Plaintiffs of their constitutional rights, as protected by the Fifth and Fourteenth Amendments, and have done so knowing that Plaintiffs will have no substantial means, other than through litigation, to address such actions.

197.     Accordingly, Plaintiffs seek a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions on Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights.

### AS AND FOR A SIXTH CLAIM FOR RELIEF:
### VIOLATIONS OF FIFTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. 1983

198.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

199.    "[T]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

200.    The Court has "recognized that government regulation of private property may . . . be so onerous that its effect is tantamount to a direct appropriation or ouster . . . and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron*, 544 U.S. 528, 537 (2005).

201.    "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415-16 (1922)

202.    Plaintiffs each had, and continue to have, a protected liberty interest in their right to operate amid the COVID-19 pandemic without arbitrary governmental interference, and in their fundamental property right to use and enjoy the land in which they hold a recognized interest. *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440-41 (E.D. Pa. 2011) (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)).

203.    Plaintiffs have now been called upon to sacrifice all, or nearly all, beneficial use of their property in the name of public health; that is, to leave their properties economically and otherwise idle, or to suffer severe fines, criminal penalties, and/or the revocation of Plaintiffs' liquor licenses should Plaintiffs fail to comply. For this, Plaintiffs have suffered a taking.

204.    Defendants have seized, without just compensation, the property of Plaintiffs, and others similarly situated across the State of New York, by forcing the closure or limitation of specified businesses and restricting travel and free association via the Executive Orders.

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

205.    Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, have resulted, and continue to result in, an unconstitutional taking in contravention of the Fifth Amendment, and have adversely impacted Plaintiffs' use of their property, such that, at least temporarily, the Executive Orders have substantially diminished the economically beneficial and profitable use of said property.

206.    Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, have rendered useless Plaintiffs' property from its economic benefit during the COVID-19 pandemic, which loss necessarily and categorically constitutes a taking. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

207.    These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment. Without extending "just compensation" to Plaintiffs, the Defendants have jeopardized the sustainability of these business and the rights of the owners with respect to their property interests.

208.    In the alternative, under the framework articulated by the Supreme Court in *Penn Central Transportation Co. v. City of New York*, 438 US 104 (1978), Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, constitute a taking based upon "the magnitude of [their] economic impact and the degree to which [they] interfere[] with legitimate property interests." *Lingle*, 544 U.S. at 540.

209.    The Supreme Court, in *Penn Central*, set forth the framework for assessing whether government action is considered a regulatory taking, identifying "[three] factors that have particular significance," including: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

expectations"; and (3) "the character of the governmental action." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

210.     Even if the regulation falls short of eliminating all economically beneficial use of the property, a taking nonetheless has occurred. *Palazzolo v. R.I.*, 533 U.S. 606, 617 (2001).

211.     Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, constitute a regulatory taking implemented for a public purpose, and thus, the failure to pay just compensation contravenes the Takings Clause of the Fifth Amendment. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 478 (6th Cir. 2004); see also Horne v. Dep't of Agric., 576 U.S. 350 (2015) ("Nothing in the text or history of the Takings Clause . . . suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

212.     Accordingly, Plaintiffs seek: (i) a declaration that the issuance of Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, constitutes an unconstitutional taking without just compensation under the Takings Clause; (ii) a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights; and (iii) compensatory damages adequate to justly compensate Plaintiffs for the regulatory taking of their property.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF:
## VIOLATIONS OF FOURTEENTH AMENDMENT UNDER 42 U.S.C. 1983

213.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

214.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV.*

215.    At its core, the Equal Protection Clause of the 14th Amendment to the United States Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups; in other words, persons who appear similarly situated must be similarly treated.

216.    When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational basis for such disparate treatment, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

217.    Here, there is no rational basis for the disparate treatment of Plaintiff by Defendants as compared to identically situated businesses throughout the State of New York.

218.    Defendant Cuomo has justified the issuance of the Executive Orders, and the guidance issued pursuant to the "New York Forward Re-Opening Plan," by suggesting that the restrictions in each are necessary to combat the COVID-19 pandemic. However, even a cursory review of the Executive Orders and the subsequent guidance shows that not only were the restrictions in each not reasonably tailored to that goal, but also that they discriminated against identically situated businesses by placing severe restrictions on some, but not others.

219.    For example, as the State of New York has moved through Phases 1, 2, 3, and 4 of the "New York Forward Re-Opening Plan," certain restrictions have been imposed upon restaurants and bars in the State of New York, such that these types of establishments may currently seat no more than fifty percent (50%) of their maximum occupancy indoors.

{H2678777.4}

40

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

220. However, not all businesses are facing the same restrictions; many businesses throughout the State of New York are able to permit the public to walk in to their respective facilities, engage in whatever business necessitated the visit to such facilities, and walk back out, all without having to be concerned for the building's maximum occupancy levels.

221. Perhaps most perplexing is the guidance issued by the SLA, purporting to prohibit the performance of live exotic dancing, whereas the same guidance indicated that the performance of live music was permissible indoors, which most assuredly discriminated against Plaintiffs Pharaohs and Body Shop, a gentlemen's clubs which receive a substantial portion of its revenue through the performance of live exotic dancing.

222. Separate and apart from the obvious violation of Plaintiffs Pharaohs and Body Shop's rights under the First Amendment to the United States Constitution as described hereinabove, more generally, Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, discriminate against identically situated businesses by placing severe and unduly burdensome restrictions on some, but not others.

223. Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, are thus in direct violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

224. Accordingly, Plaintiffs seek a declaration that the issuance of Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fourteenth Amendment rights.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF:
## VIOLATION OF NINTH AND TENTH AMENDMENTS UNDER 42 U.S.C. 1983

225.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

226.    The Ninth Amendment to the United States Constitution establishes that the enumeration in the Constitution of specific rights shall not be construed in order to deny or disparage the rights retained by the American people. *See U.S. Const. amend. IX.*

227.    The Tenth Amendment to the United States Constitution establishes that the powers not delegated to the States by the Unites States Constitution, nor prohibited by the United States Constitution to the States, are reserved to the States respectively, or to the American people. *See U.S. Const. amend. X.*

228.    Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, are in violation of Plaintiffs' rights under the Ninth and Tenth Amendments of the United States Constitution.

229.    As a direct and proximate result of Defendant Cuomo's Executive Orders, as interpreted, expanded upon, and enforced by Defendant James, Plaintiffs are, and will only continue to suffer, a significant deprivation of their liberty and property interests.

230.    Plaintiffs, other than as set forth in this Complaint, have no adequate remedy at law to address the wrongs described herein. The declaratory and injunctive relief sought by Plaintiffs is thus necessary to prevent continued and future harm and injury.

231.    Accordingly, Plaintiffs seek a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Ninth and Tenth Amendment rights.

## AS AND FOR A NINTH CLAIM FOR RELIEF:

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

## VIOLATION OF TAKE CARE CLAUSE UNDER N.Y. CONST. ART. IV, § 3

232.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

233.    The Take Care Clause of the New York State Constitution establishes: "The governor shall expedite all such measures as may be resolved upon by the legislature, and shall take care that the laws are faithfully executed." *N.Y. Const. art. IV, § 3*.

234.    The Take Care Clause vests the Governor with the duty to obey the law, and repudiates any notion that he may dispense with the law's execution. *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).

235.    The Take Care Clause thereby underscores the duty of the Executive Branch to not disregard the laws of the Legislature, but to faithfully execute those laws.

236.    The notion that acting in what Defendant Cuomo believes to be the best interests of the population suspends Constitutional restrictions on the powers of the executive branch of government is legally flawed, as is the notion that constitutional restrictions on the exercise of the power of the Executive Branch are stayed during a crisis.

237.    By virtue of committing violations of the New York State and United States Constitutions, Defendant Cuomo, by and through Defendant James, who has been complicit in Defendant Cuomo's misdeeds,  has failed his duty to ensure that the laws are faithfully executed, pursuant to the Take Care Clause of the New York State Constitution.

238.    Defendant Cuomo, by and through, and as enforced by, Defendant James, has invoked, and continues to invoke, his executive powers to change hundreds of existing laws and regulations. In fact, in the five (5) months following Defendant Cuomo's issuance of Executive Order 202 on March 7, 2020, sweeping changes have been made to State regulations governing

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD| SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

hospitals, public health facilities, nursing homes, elections, open meetings, business, court proceedings, as well as mandating social distancing

239.    Defendant Cuomo, by and through Defendant James, has not taken care to ensure that New York State laws are faithfully executed, and instead, has fervidly expanded his power by circumventing the Legislature to issue, to date, fifty-six (56) sweeping Executive Orders.

240.    Defendant Cuomo, by and through Defendant James, has violated numerous provisions of both New York State and United States Constitutions, and has therefore failed his duty to ensure that the laws are faithfully executed, pursuant to the Take Care Clause of the New York State Constitution.

241.    Accordingly, Plaintiffs seek a declaration of this Court providing that Defendant Cuomo, by and through Defendant James, has violated the duty vested to him by virtue of his position as Governor to ensure that the laws are faithfully executed under the Take Care Clause.

## AS AND FOR A TENTH CLAIM FOR RELIEF:
## ATTORNEY'S FEES AND COSTS UNDER 42 U.S.C. 1988

242.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

243.    42 U.S.C. § 1988(b) provides, in relevant part: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

244.    The Supreme Court, in *Hutto v. Finney*, 437 U.S. 678 (1978), confirmed the discretion of courts to award attorney's fees pursuant to 42 U.S.C. § 1988 in actions where a plaintiff is seeking redress for the deprivation of constitutional rights under 42 U.S.C. § 1983.

245.    In the instant matter, Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief are brought to enforce a provision of 42 U.S.C. § 1983 – namely, that, under

{H2678777.4}

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD| SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

44

color of State law, Defendants have subjected one or all of the Plaintiffs to the egregious and substantial deprivation of certain rights, privileges, and immunities secured by the United States Constitution. *See 42 U.S.C. § 1983.*

246.    These rights include, but are not limited to, Plaintiffs' rights to substantive and procedural due process under the Fifth and Fourteenth Amendments, Plaintiffs' right to be free government interference with its property rights under the Takings Clause of the Fifth Amendment, and Plaintiffs' right to be free from government interference with its rights under the Ninth and Tenth Amendments, each as secured by the United States Constitution.

247.    Accordingly, Plaintiffs' seek their reasonable attorney fees as part of its costs in seeking redress for the deprivation of its constitutional rights under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs demand judgment as follows:

a.  On its First Claim for Relief, that this Court issue and enter a declaratory judgment, pursuant to 28 U.S.C § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that New York State Executive Law § 29-a is facially and substantively unconstitutional, as an unconstitutional delegation of legislative authority to Defendant Cuomo;

b.  On its Second Claim for Relief, that this Court issue and enter a declaratory judgment, pursuant to 28 U.S.C § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that Defendant Cuomo's actions exceed the scope of his authority under New York State Executive Law § 29-a, and that such actions are an abuse of Defendant Cuomo's executive powers thereunder;

c.  On its Third Claim for Relief, that this Court issue and enter a declaratory judgment, pursuant to 28 U.S.C § 2201 and Rule 57 of the Federal Rules of

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

Civil Procedure, declaring that the prohibition against exotic dancing at licensed gentlemen's clubs, bars, and restaurants is facially unconstitutional as applied to Plaintiffs Pharaohs and Body Shop under the First and Fourteenth Amendments to the United States Constitution and corresponding provisions of the New York State Constitution, as well as enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs Pharaohs and Body Shop in violation of Plaintiffs Pharaohs' and Body Shop's First Amendment rights;

d.  On its Fourth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights;

e.  On its Fifth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights;

f.  On its Sixth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fifth and Fourteenth Amendment rights;

g.  On its Seventh Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement

{H2678777.4}

46

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Fourteenth Amendment rights;

h.  On its Eighth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs in violation of Plaintiffs' Ninth and Tenth Amendment rights;

i.  On its Ninth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable government/law enforcement authorities, from enforcing these arbitrary restrictions against Plaintiffs, in violation of the Take Care Clause under the New York State Constitution;

j.  On its Tenth Claim for Relief, that this Court enter an Order awarding Plaintiffs their reasonable attorney's fees pursuant to 42 U.S.C. § 1988, for Plaintiffs' seeking redress for Defendants' violation of Plaintiffs' constitutional rights under 42 U.S.C. § 1983; and

k.  Such other and further relief as this Court may deem just and proper.

DATED: August 7, 2020

Respectfully submitted,

Steven M. Cohen, Esq.
Corey J. Hogan, Esq.
**HOGANWILLIG, PLLC**
*Attorneys for Plaintiffs*
2410 North Forest Road, Suite 301
Amherst, New York 14068
(716) 636-7600

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com